511 So.2d 381 (1987)
Stephen YOUNG and Cynthia Young, His Wife, Appellants,
v.
TORTOISE ISLAND HOMEOWNER'S ASSOCIATION, INC., Appellee.
No. 86-721.
District Court of Appeal of Florida, Fifth District.
July 23, 1987.
Rehearing Denied August 20, 1987.
James R. Dressler, Cocoa Beach, for appellants.
T.M. Barlow of Gleason, Barlow & Dyer, P.A., Indialantic, for appellee.
SHARP, Judge.
Stephen and Cynthia Young appeal from a mandatory injunction requiring them to modify the flat roof of their residence by replacing it with a peaked roof like the one shown in their construction plans which were approved by the Tortoise Island Architectural Control Board. The primary reason the Youngs' original building plans with a flat roof were not approved by the Board was because the architect retained by the Tortoise Island Home Owner's Association *382 to serve on the Control Board, did not like flat roofs, and the residences in close proximity to the Youngs' lot were two stories with sloped or pitched roofs. The Board determined that the Youngs' proposed one-story residence with a flat roof was not in conformity or harmony with the other residences in the Tortoise Island subdivision. We reverse.
The record in this case established that the Youngs purchased a lot in Tortoise Island, a platted P.U.D. in Brevard County, Florida, in June of 1984. The Recorded Declaration of Restrictions imposes extensive building requirements, including (among others) limitations to single-family residential units; maximum two-story heights; only three-car garages; no separate guest house or out-buildings; 2,000 minimum square feet floor area; garage doors not to face the adjacent street; setback restrictions; limitations on swimming pools, decks, patios and screens; height and location of fences; regulations of boat-houses and docks; and prohibitions against filling or subdividing, signs, certain animals and clotheslines. Regarding roofs, the restriction provides:
All roofs shall be of a permanent construction and shall be constructed of clay tile, heavy split cedar shake, or other materials approved by the Board aforesaid at their uncontrolled discretion.
Paragraph two of the Restrictions provides that prior to the construction of any residence in Tortoise Island, the owner must submit to the Architectural Control Board two sets of building plans, two sets of specifications and two copies of a plot plan. The Board's function is to ensure that the proposed residence complies in all respects with the Deed Restrictions, and to determine:
[T]hat said building or other structure is in conformity and harmony not only with respect to the topography and finished ground elevations, but also with the architectural design of completed or proposed other structures located on said property.
The Board's approval was required before any construction could be commenced. The method to demonstrate approval as set forth in the Deed Restrictions was for the Board to sign and return to the owner a set of plans, specifications or plat plans.
In the event the Board fails to approve or disapprove such design or location within thirty (30) days after the same have been submitted to said Board such approval will not be required and this covenant will be deemed to have been fully complied with.
Prior to purchasing a lot in Tortoise Island, the Youngs drove around the subdivision and looked carefully at the residences already built there. The testimony at trial established that there were approximately 250 lots in the development, and about one-half have been developed. There is no one common architectural style employed by the owners. There are Spanish style, oriental, contemporary, ranch-style, traditional one-story and two-stories, and a variety of roof styles from hipped and gabled to some flat roofs on homes built before the current members of the Architectural Control Board took office.
Cynthia had seen a French Provencial, one-story home in Palm Beach, with a flat roof, as is indigenous to that style, which she wanted to copy for their Tortoise Island house. Stephen submitted all of the plans and documents required by the Restrictions for such a house to the Architectural Control Board on July 26, 1984.
Ted Ostavich, chairman of the Control Board, wrote the Youngs a letter dated July 31, 1984, in which he said the Board needed more information to process the plans. He enclosed a copy of the Board's Guidelines and Checklist, which repeated some of the building restrictions in the Recorded Declaration, added additional restrictions and requirements, and required additional information. The Guidelines also required the owner to agree to all of the additional requirements in the Guidelines, and to so indicate by signing a copy and returning it to the Board. Nothing in the Guidelines, however, mentioned a prohibition against flat roofs on an otherwise acceptable structure.
*383 Ostavich testified that without the Youngs' signature agreeing to the additional building restrictions imposed by the Guidelines, his plans would not be processed. In the letter dated July 31, Ostavich said:
The Board made a preliminary review of your plans and there was a very strong feeling the proposed structure would not be architecturally compatible with the other homes. You may also want to reconsider the 15' width of your driveway... .
He concluded that Stephen should feel free to call him if he had any questions.
In a similar letter dated August 1, 1984, Ostavich related the Board's "concerns" about the Youngs' plans, after another "preliminary review." The Board again suggested the driveway was too narrow, and said, "... there is concern about a flat roof fitting into the development aesthetically... ." It concluded, as had the prior letter, that they wanted to talk to Young further on this subject, and they were awaiting further information requested by the Guidelines.
The Youngs were out of town, but Stephen's father contacted Ostavich to reassure him that the quality of the proposed structure was high and enclosed photographs of a house in Lake Worth, advertised at $1,850,000, which was similar in style to the one the Youngs were attempting to copy. No further written communications transpired although there was disputed testimony the Youngs were told their building plans were turned down. The Youngs commenced construction of their house in mid-September of 1984.
At that point, the Tortoise Island Home Owners Associations commenced a court action to stop the construction. A preliminary injunction issued after the Youngs' house was partially constructed. Young again submitted his building plans and signed the Guidelines. They were formally disapproved by the Board in a letter dated December 6, 1984, for a list of twelve reasons, not one of which mentioned a flat roof design.
It is clear from the testimony that the primary reason the Youngs' plans were not approved was because it had a flat roof line. Vislay, the architect serving on the Board, testified that in his judgment flat roofs were not compatible with the Tortoise Island development. He said he had the final review as to aesthetics. However, he admitted the Youngs' design might be considered acceptable aesthetically, in the judgment of another architect. His rejection of flat roofs was a matter of "personal preference."
When Young met with Gatti, president of the Homeowners Association, and Ostovich on December 12, he only asked what it would take to get his plans approved and the injunction lifted so he could salvage his construction contracts. They drew a peaked roof on the plans and made various additional changes and requirements. Young complied with all of the additional requirements, some of which were not contained in the recorded restrictions, and they are not involved in this lawsuit.
However, after the plans were approved and the injunction lifted, Young completed his home with the original flat roof rather than the peaked roof. He argues the Architectural Control Board had no authority to impose a prohibition against flat roofs. The trial court found that the flat roof prohibition was within the Board's power to adopt reasonable rules and regulations to govern activities in Tortoise Island, as provided in the recorded Declaration. It also found that the Board had timely rejected the Youngs' proposed building plans.
In Florida there are two competing principles applicable to this case, both of which cannot prevail here. The first is to give an equity court broad discretion in deciding matters relating to mandatory injunctions Kies v. Hollub, 450 So.2d 251 (Fla. 3d DCA), review denied, 453 So.2d 1364 (Fla. 1984). The second is to construe restrictive covenants strictly against those who assert the power to limit an owner's free use of his land.[1]Orange Gardens *384 Civic Association v. Harris, 382 So.2d 1340 (Fla. 5th DCA 1980). We think the latter principle dictates the proper result in this case, although the first principle requires us to accept the trial court's finding that the Youngs' plans were timely rejected by the Board.
The flat roof prohibition in this case was not a part of the recorded restrictions, nor even part of the Guidelines and Checklist adopted pursuant to the Board's rule-making authority (even assuming it would be valid, had it been so promulgated). Rather, the flat roof prohibition can only be justified by the power of the Board to pass on aesthetics, harmony and balance  admittedly very personal, and vague concepts.
Where an agency or board has the absolute power or discretion to approve or disapprove building plans, Florida courts take the position that such approval cannot be exercised arbitrarily or unreasonably. Voight v. Harbour Heights Improvement Association, 218 So.2d 803 (Fla. 4th DCA 1969); Engvalson v. Webster, 74 So.2d 113 (Fla. 1954). In the absence of an existing pattern or scheme of type of architecture which puts a prospective purchaser on notice that only one kind of style will be allowed,[2] either in the recorded restrictions[3] or de facto from the unified building scheme built on the subdivision,[4] such a board does not have the power or discretion to impose only one style over another, based purely on "aesthetic concepts."
We do not agree with our sister court that an architectural control board is strictly limited to enforcing only the restrictions in the recorded declaration, see Voight v. Harbour Heights Improvement Association, 218 So.2d 803 (Fla. 4th DCA 1969). However, in this case the flat roof design violated no recorded building restrictions, no objective rule adopted by the Board, and no de facto common existing building style in Tortoise Island. It was therefore beyond the power of the Architectural Control Board to devise and impose a flat roof prohibition under the facts of this case. Its actions in this regard were unreasonable and arbitrary, and should not have been enforced. Kies v. Hollub; Voight v. Harbour Heights Improvement Association; Donoghue v. Prynnwood Corp., 356 Mass. 703, 255 N.E.2d 326 (Mass. 1970).
REVERSED.
DAUKSCH and COWART, JJ., concur.
NOTES
[1] We do not think the cases dealing with the power of condominium associations to regulate use of common elements are relevant. Cf. Hidden Harbour Estates v. Norman, 309 So.2d 180 (Fla. 4th DCA 1975).
[2] See, Field Properties, Inc. v. Fritz, 315 So.2d 101 (Fla. 2d DCA 1975), cert. denied, 330 So.2d 16 (Fla. 1976).
[3] See Osius v. Barton, 109 Fla. 556, 147 So. 862 (Fla. 1933); Gaskin v. Harris, 82 N.M. 336, 481 P.2d 698 (N.M. 1971).
[4] See Prestwick Landowners' Association v. Underhill, 69 Ohio App.2d 45, 429 N.E.2d 1191 (Ohio App. 1980).