547 So.2d 319 (1989)
Roy LATHAN, et al., Appellants,
v.
HANOVER WOODS HOMEOWNERS ASSOCIATION, INC., Appellee.
No. 88-1427.
District Court of Appeal of Florida, Fifth District.
August 10, 1989.
*320 Royce D. Pipkins, of Royce D. Pipkins, P.A., Orlando, for appellants.
Richard L. Robison, of Robison, Owen & Cook, P.A., Casselberry, for appellee.
SHARP, Judge.
The Lathans appeal from a final judgment which granted Hanover Woods Homeowners Association (Association) a permanent injunction against them, and required removal of a skateboard play ramp from the Lathans' back yard. We reverse.
The Lathans, parents of three teenagers, constructed the ramp in a rear corner of their heavily wooded, two-acre residential lot in the Hanover Woods subdivision. The subdivision lots are subject to restrictive covenants as enumerated in the Hanover Woods Declaration of Covenants and Restrictions (Covenants), filed with Seminole County on January 29, 1979. The lots are further subject to an addendum to the Covenants, the Architectural Review Board Planning Criteria (Planning Criteria).
Prior to construction of the ramp, the Lathans consulted Paragraph 10 of the Planning Criteria, entitled "Games and Play Structures." That paragraph reads as follows:
Basketball backboards and any other fixed games and play structures shall be located at the side or rear of the Living Unit, or on the inside portion of the corner Lots within the setback lines. Treehouse or platforms of a like kind or nature shall not be constructed on any part of the Lot located in front of the rear line of the Living Unit constructed thereon.
The Lathans' ramp is in compliance with the above.
Notably absent from paragraph 10 is any requirement for submission of plans or approval by the ARB.[1] Relying on this paragraph, and an oral statement of permission by Ed Merchant, President of the Association and one of three ARB members, the Lathans built the ramp. In height the ramp does not exceed a basketball backboard and it is closer to the ground than a tree house. A large swing set is wider. A playhouse or treehouse is more complex in structure.
Subsequently, attorneys for the Association demanded the ramp be removed for failure to submit written plans and specifications to the ARB and obtain approval prior to construction. The Lathans refused and the Association brought suit, contending that the ramp violated Article VII[2] of the Covenants. The introductory paragraph to Article VII reads as follows:

No building, fence, wall or other structure shall be commenced, erected or maintained upon any Lot nor shall any exterior addition to or change or alteration be made to any previous improvement on a Lot until the plans and specifications showing the nature, kind, shape, height, materials and location *321 of the same shall have been submitted to and approved in writing as to the harmony of external design and location in relation to surrounding structures and topography by the Architectural Review Board as hereinafter defined. (emphasis added)
Article VII indicates that the Covenants and Planning Criteria are to be accorded equal weight. Section 4 of that article provides that the Board of Directors shall have the right and obligation to enforce the provisions of Article VII relating to the Planning Criteria. Section 2 of Article VII specifically states that the Planning Criteria's purpose is to give guidelines to homeowners, providing:
The Developer, in order to give guidelines to Owners concerning construction and maintenance of Living Units, hereby promulgates the ARCHITECTURAL REVIEW BOARD PLANNING CRITERIA ("Planning Criteria"), for the Property, a copy of which is attached as Exhibit "A". The Developer declares that The Property shall be held, transferred, sold, conveyed and occupied subject to the Planning Criteria set forth on Exhibit "A" as amended from time to time by the ARB. (emphasis added)
However, the language of certain provisions of the Planning Criteria is in conflict with Article VII. Paragraphs 7, 10, 13, 17, 19 and 24 of the Planning Criteria do not require approval by the ARB[3] despite the above introduction to Article VII. Moreover, paragraph 10 of the Planning Criteria had consistently been interpreted not to require prior approval by the ARB, and play structures, basketball backboards, gyms, swing sets, playhouses and treehouses have all been erected without board approval.
The Florida Supreme Court has held that covenants that run with the land must be strictly construed in favor of free and unrestricted use of real property. Moore v. Stevens, 90 Fla. 879, 106 So. 901 (1925). Covenants imposed by a general plan, which restrain the free use of real property, although generally valid and enforceable, are not favored in the law. Kies v. Hollub, 450 So.2d 251 (Fla. 3d DCA), rev. denied, 453 So.2d 1364 (Fla. 1984). In Young v. Tortoise Island Homeowners, Inc., 511 So.2d 381 (Fla. 5th DCA), rev. denied, 518 So.2d 1278 (Fla. 1987), we held that restrictive covenants are strictly construed against those who assert the power to limit the homeowner's free use of his land.
Strict construction of the language of the Covenants and the Planning Criteria, together with the Association's earlier interpretation of the requirements of paragraph 10, requires us to reverse. We recognize, as we did in Young, that there are two competing principles of law involved here: the broad discretion an equity court has in matters relating to mandatory injunctions versus the strict construction of restrictive covenant language against those who attempt to restrain free use of land. However, we have previously determined that the latter principle must prevail. Young; Orange Gardens Civic Association v. Harris, 382 So.2d 1340 (Fla. 5th DCA 1980).
REVERSED.
DANIEL, C.J., and COBB, J., concur.
NOTES
[1] Architectural Review Board.
[2] No specific section under Article VII was cited.
[3] These paragraphs involve dwelling quality, games and play structures, swimming pools and tennis courts, removal of trees of a certain size and greater, mailboxes, and signs, respectively.