595 So.2d 1019 (1992)
KILLEARN ACRES HOMEOWNERS ASSOCIATION, INC., a Florida Corporation, Appellant,
v.
Michael L. KEEVER and Shelly R. Keever, Appellees.
No. 91-00180.
District Court of Appeal of Florida, First District.
March 9, 1992.
*1020 Elwin R. Thrasher, Jr., Tallahassee, for appellant.
Phil Patterson, Tallahassee, for appellees.
BOOTH, Judge.
This cause is before us on appeal from a final judgment denying appellant's complaint for injunctive relief. Appellant Killearn Acres Homeowners Association, Inc. contends that the trial court erred in: (1) substituting its judgment for that of appellant's "Architectural Control Committee" in finding that appellant acted arbitrarily in enforcing its restrictive covenant; and (2) finding that the doctrines of waiver and estoppel precluded appellant from enforcing its covenant.
Appellees purchased a home in the Killearn Acres Subdivision in Leon County. Prior to their purchase, appellees, escorted by a real estate agent, visited several other properties in the subdivision. Appellees observed several satellite dishes in the subdivision and told the real estate agent that they wanted to build a satellite dish on whatever property they purchased. The real estate agent did not inform appellees, one way or the other, whether they would be permitted to build a satellite dish.
After purchasing their home, appellees began the installation of a satellite dish in their side yard. As soon as appellant learned of the construction and before the installation was complete, a representative of appellant's Architectural Control Committee went to appellees and told them that they needed approval by the committee and that the location chosen for the dish was unacceptable. The representative also gave appellees a copy of the subdivision's restrictive covenants,[1] which in pertinent part provided:
ARTICLE VI ARCHITECTURAL CONTROL
No building, fence, deck, wall or other structure shall be commenced, erected, or maintained upon The Properties nor shall any exterior addition to or change or alteration therein be made until the plans and specifications showing the nature, kind, shape, height, materials and location of the same shall have been submitted ... and approved in writing as to harmony of external design and location in relation to surrounding structures and topography by an architectural committee... . The Architectural Control Committee shall have the absolute and exclusive right to refuse to approve any such building plans and specifications and lot grading and landscaping plans which are not suitable or desirable in its opinion for any reason, including purely esthetic reasons connected with future development plans of the Developer of said land or contiguous lands.
*1021 Appellees thereafter completed installation of the satellite dish in the location they had previously selected. The record indicates the structure was to the side of the house but clearly visible from the front.[2]
Appellant filed a complaint seeking injunctive relief. At trial, the parties adduced evidence showing the facts recited above. Appellees presented photographic and videotape evidence, and appellant's representative testified, that nine of the seven hundred ninety-eight other homeowners in the subdivision had installed satellite dishes. Appellant's Architectural Control Committee had determined to take no action against eight of these homeowners because the satellite dishes were in the backyards. As to the ninth homeowner, appellant had determined to seek enforcement of the covenant depending upon the outcome of the instant case.
At the conclusion of the evidence, the trial court found in pertinent part:
That defendant's [sic] satellite television antenna is a structure within the meaning of that term as used in the restrictive covenant in question; that the antenna is not in the defendant's [sic] front yard; that the architectural control committee of the Homeowner's Association does not have a fairly definitive standard as to what satellite antennas will be approved or not approve [sic]; that the architectural control committee has permitted eight of ten satellite antennas to remain in place despite there being no appreciable difference between the allowed and disallowed structures; that defendants relied on the fact other similar satellite dishes were allowed in the neighborhood before defendants erected their satellite antenna; that there has been, by way of estoppel and waiver in this specific case, a circumstances and situation that would render it inequitable for the Court to enforce this particular restrictive covenant against defendants... .
Thus, the trial court ruled against appellant based on arbitrary and unreasonable enforcement, waiver, and estoppel.
We turn then to the first issue. Where a party seeks an injunction to prevent the violation of a restrictive covenant, the party establishes a prima facie case by presenting evidence showing the violation. Europco Management Co. of America v. Smith, 572 So.2d 963, 967 (Fla. 1st DCA 1990); citing Stephl v. Moore, 94 Fla. 313, 114 So. 455 (1927). The party challenging enforcement of the covenant thus has the burden to prove defensive matters that preclude enforcement, such as that the enforcing authority has acted in an unreasonable or arbitrary manner.
The burden of proving that the party seeking enforcement has abused its discretion is a heavy one, particularly where, as here, the party has "the absolute and exclusive right to refuse to approve ... plans which are not suitable or desirable in its opinion for any reason, including purely esthetic reasons." See Europco Management, 572 So.2d at 969; Coral Gables Investments v. Graham Companies, 528 So.2d 989, 990-991 (Fla. 3d DCA 1988). Photographs and videotapes, standing alone, are generally inadequate to prove that the party seeking enforcement has abused its discretion. Such evidence merely invites the trial court to apply its personal views as to aesthetic standards, rather than to review the enforcing party's exercise of discretion. In Europco Management v. Smith, 572 So.2d at 969, this court held:
The burden is on the party challenging enforcement of the restrictions to show in what manner the developer has illegally exceeded or abused reserved authority and discretion to approve architectural changes. Whether the Smiths' addition diminished the value of surrounding property is not controlling, absent a *1022 showing that the developer or the committee unlawfully exercised its approval authority... . The Smiths, as the challenging party, rather than the developer, bear the burden of showing by competent substantial evidence that this discretion has been arbitrarily and unreasonably exercised in this instance. The trial court's function is to review that exercise of discretion based on the opinion evidence adduced, not upon a personal opinion formed after review of photographs of the development (as argued by the Smiths) and application of personal views concerning architectural standards and concepts of aesthetics.
Here, the evidence is uncontroverted that appellees' home was subject to the restrictive covenant above quoted and that appellees installed their satellite dish without the approval of appellant's Architectural Control Committee. The trial court found, and it is undisputed, that a satellite dish is a "structure" within the meaning of the covenant. Appellant therefore presented a prima facie case that appellees violated the applicable covenant.
The burden was then upon appellees to prove that appellant exercised its discretion in an unreasonable or arbitrary manner. Appellees, however, relied on photographic and videotape evidence that nine other homeowners in the subdivision had installed satellite dishes. Eight of these dishes, located in the backyards of homes, were not challenged by appellant. The ninth, located similarly to appellees, is subject to challenge pending the outcome herein. This evidence falls short of competent, substantial evidence of selective or arbitrary enforcement. We must therefore reverse as to the first issue.
We must also reverse as to the second issue. A party asserting estoppel must show that: (1) the party to be estopped made a representation of material fact and later took a position contrary to that representation; (2) the party claiming estoppel relied upon this representation; and (3) that party suffered a detrimental change in position as a result of this reliance. Enegren v. Marathon Country Club Condominium West Association, Inc., 525 So.2d 488, 489 (Fla. 3d DCA 1988); Quality Shell Homes & Supply Company, Inc. v. Roley, 186 So.2d 837, 841 (Fla. 1st DCA 1966). The evidence below simply does not permit the inference that appellant represented to appellees that they could install the satellite dish. The doctrine of waiver is also inapplicable to this case. See Taylor v. Kenco Chemical and Manufacturing Corporation, 465 So.2d 581, 587 (Fla. 1st DCA 1985); Siering v. Bronson, 564 So.2d 247, 248 (Fla. 5th DCA 1990); Coffman v. James, 177 So.2d 25, 31 (Fla. 1st DCA 1965).
The final judgment below is reversed, and this cause is remanded for proceedings consistent herewith.
WIGGINTON and MINER, JJ., concur.
NOTES
[1] Appellees were presumably aware of the restrictive covenants recorded September 25, 1970.
[2] Glenn Smith, the Committee's representative, testified in pertinent part as follows:

The location of the dish is in the front part of the house. It is very noticeable. It's an eyesore, and you can see it from the corner. You can see it from the front, from the front of the house. It's just right on top of the house, just jumping out at you.
... .
It's the way the position is. It's viewable from the front of the house, clearly visible. And it's an eyesore. It looks bad.