NESBITT, Judge. .
Plaintiff Miami Lakes Civic Association, Inc. (the “association”) appeals a final judgment entered in favor of the defendant homeowner, Rolando J. Encinosa, Jr. (Encinosa). We reverse.
Encinosa owns a home on the shores of Lake Patricia in Miami Lakes. He completed construction of a deck in his backyard in 1992. Encinosa built the deck without the prior approval of the Miami Lakes Architectural Control Committee (the “committee”) as required by certain restrictive covenants to which his property is subject. The relevant provisions provide in pertinent part:
15. ARCHITECTURAL CONTROL: No building, wall, or other structure or improvement of any nature shall be erected, placed or altered on any lot until the construction plans and specifications and a plan showing the location of the structure have been approved in writing by the Architectural Control Committee_ Refusal of approval of plans, specifications and plot plán, or any of them, may be based on. any ground, including purely aesthetic grounds, which in the sole and uncontrolled discretion of said Architectural Control Committee shall seem sufficient ....
16. LAKE AND LAKE FRONT LOTS: As to Lots 1, 3 through 15 both inclusive, 19 through 22 both inclusive, 24 through 38 both inclusive, 36, 37,40, 41,42, 47 through 51 both inclusive, 53, and 54, all of Block 2A; of said MIAMI LAKES — SECTION TWO, all of which are lake front lots, and as to “Lake Patricia” shown on said plat the following additional restrictions shall be applicable:
*272 (a) No boathouse, dock, wharf, or other structure of any kind shall be erected, placed, altered, or maintained on the shores of Lake Patricia as shown on said plat; unless the construction plans and specifications and a plan showing the location of the structure have been approved by the Architectural Control Committee as to quality of workmanship and materials, harmony of exterior design with existing structures, location with respect to topography and finish grade elevation, and as to desirability per se. It is the intention of this instrument to authorize the committee in its sole discretion to. approve or disapprove any such boathouse, dock, wharf, or other structure on purely aesthetic grounds or any other grounds or for the reason that there should be no such boathouse, dock, wharf, or other structure on the lakefront.
After the deck was completed, Encinosa submitted the plans to the committee. It denied approval primarily on the grounds that the. deck was too large and “out of context with what was going on in the surrounding properties and on the lake as a whole.” The committee asked Encinosa to resubmit plans for a scaled down version of the deck. He declined, and the association filed the instant action for injunctive 'relief seeking, among other things, an order requiring Encinosa to remove the deck.
The ease was tried to the court. It ultimately concluded that the restrictive covenants should not be enforced. The court found that the association had engaged in selective enforcement and had’allowed other violations to go unchecked. It also determined that there was a lack of criteria or guidelines for construction of decks. This lack of criteria, coupled with the committee’s “uncontrolled discretion,” persuaded the lower court that the restrictions should not be enforced.
“Restrictive covenants contained within a deed which reserve the grantor’s right to approve plans for improving the land are valid and enforceable against the grantee unless that right or the exercise of it is arbitrary and unreasonable.” Coral Gables Invs., Inc. v. Graham Cos., 528 So.2d 989, 990 (Fla. 3d DCA 1988).
[The developer’s reservation of control,] although amounting to plenary discretion in such matters, is to be fairly exercised in a reasonable manner by the developer directly or through delegation to a committee- [The restrictive covenants] simply vest in the developer or a delegated committee reasonable authority and discretion to control exterior architectural design and construction so as to maintain the consistency and compatibility of the design and appearance with the entire project pursuant to reasonable policies and standards uniformly and fairly, not arbitrarily, applied. There is no requirement that such policies and standards be in writing. ...
Europco Management Co. v. Smith, 572 So.2d 963, 968 (Fla. 1st DCA 1990). The association having put on a prima facie case demonstrating Encinosa’s violation of the restrictive covenants, the burden shifted to En-einosa to show how the association had acted in an unreasonable or arbitrary manner. See Killearn Acres Homeowners Ass’n, Inc. v. Keever, 595 So.2d 1019, 1021 (Fla. 1st DCA 1992).
First, the trial court found that the association had engaged in selective enforcement. We agree with the association that there is not competent substantial evidence to support such a finding. The trial testimony showed that when the association learned of other structures on the lakefront, it asked the homeowners to submit plans. Some of the structures were approved, and others were disapproved. Encinosa bases his claim of selective enforcement on the fact that he was the only one against whom the association filed a civil action. The record reflects, however, that this is because those homeowners whose plans were disapproved ultimately voluntarily complied with the association’s requirements.
Next, the lower court concluded that the lack of criteria or guidelines governing the construction of decks, affording the committee uncontrolled discretion in their approval or disapproval, warranted the denial of the association’s request for injunctive relief. Likewise, Encinosa argues that the lack of a unified scheme, pattern, or type of struc *273 ture on the lakefront failed to put him on notice as to what was a permissible improvement. See Young v. Tortoise Island Homeowner’s Ass’n, Inc., 511 So.2d 381, 384 (Fla. 5th DCA 1987).
The committee disapproved Encinosa’s deck based on its view that the deck was too large. While it is true that there were different types of structures on the lakefront (Tiki huts, docks, etc.), Eneinosa’s deck was not disapproved based on its style or function. It was disapproved because it is much larger in scale than the other structures on the lake; it is almost the full width of the property at the waterfront. Encinosa himself, contradicting his claim of lack of notice, testified that allowing others to build a deck like his would “change the looks” of the neighborhood. Thus, the evidence presented refutes the trial court’s conclusion that there was a lack of criteria or guidelines with respect to deck construction that rendered the committee’s action unenforceable.
We have considered the other issues raised by Encinosa in support of affirmance but find them to be, as did the trial judge, without merit. Our reversal of the final judgment here involved renders our consideration of the attorney’s fee order in the consolidated case unnecessary.
Reversed and remanded with directions to enter the mandatory injunction .sought by the association.