W. SHARP, J.
The Robertsons, Edward and Theresa, appeal from a summary final judgment entered against them in a suit brought by Countryside PUD Residential Homeowners Association, Inc. (Countryside), to enforce covenants and restrictions of record. Based on his reading of the covenants and restrictions alone, the trial judge ruled, as a matter of law, the Rob-ertsons could not keep a brown roof on their home since it had not been approved by the two architect review committees, and that they must remove it and replace it with one having Hearthstone grey shingles. We reverse because we think there are unresolved material questions of fact[1] which cannot be resolved based on a reading of the documents.
The record established that the Robert-sons took title to Lot 21, Countryside PUD, Phase IV C on September 19, 1995. They purchased the lot from Intervest Construction, Inc. (ICI), the developer of the subdivision, together with the right to use ICI’s plan 2370 to construct their home, for $49,000.00. ICI agreed not to allow its plan 2370 to be used for any other house in the Steeplechase area, Countryside, where the home was to be constructed.
Pursuant to the Master Declarations of record, as well as the ones for Steeplechase, no building or structure could be built on the lot unless and until the owner submitted an application to the architectural review committees for the Homeowners Associations, and received an approval for the design and materials planned to be used. The common plan and scheme for the Steeplechase area was for roofs with asphalt shingles colored Hearthstone grey.
The Robertsons contracted with a general contractor other that ICI to build their home, pursuant to ICI’s plan 2370. They did not seek approval from either architectural review committee before commencing construction. When the home was nearing completion and it became evident the color of the roof was brown and not grey, the two associations wrote to ICI and to the Robertsons, demanding that they seek approval for the roof. The Robertsons belatedly sought approval but it was denied. When they did not alter the roof color, this lawsuit ensued.
*676 The Robertsons alleged by way of defense that they were using ICI’s pre-approved plan and design for their home, and therefore they did not need to get approval for their plan and design from the architectural review committees. This was partially based on representations made to them by ICI, and by language in the restrictions, which provided:
In addition to the foregoing, construction (including all of the elements hereof exempted with respect to construction within the existing Subdivision by Inter-vest or Developer on the Unplatted Parcels (whether or not hereafter platted)) shall be deemed to be pre-approved by, and not subject to the jurisdiction of the RARC (The architectural review committee for the Master Association) if such construction complies with the terms and provisions of the PUD Agreement.
Art. II § 2.6.
Both parties agree this exemption would apply to the Robertsons’ lot, if ICI had been the general contractor and built the Robertsons’ house. Under those circumstances the Robertsons would not have had to obtain approval from the Homeowner Associations’ architectural review committees for their house plan and design, or for the color of the roof. However, Countryside relies on the fact that ICI did not actually build the house. ICI merely planned and designed the house, which included selecting the color of the roof. The Robertsons contend this is too narrow an interpretation of the exemption from the restriction, and that it should make no difference who actually weilded the hammer and nails so long as the plan and design is one of ICI’s.
There is some suggestion in the record to support this broader interpretation of the exemption quoted above. ICI apparently made the representation to the Rob-ertsons when it sold them its lot and plans that Homeowner Association approval need not be obtained. The Homeowner Associations also apparently initially thought the exemption applied because they did not require the Robertsons to obtain approval from the architectural review committees before they commenced, construction of the house. That only became an issue when the construction reached the roof level and the color was brown.
At that stage, Countryside wrote a letter to ICI informing it that a builder was putting up a roof with the wrong colored shingles and it chided ICI for having “approved the variance.” It complained that anything anyone wants in new construction is “slipping through.” It concluded that if ICI is going to abrogate its own covenants, why bother to have them? ICI responded that it had approved the plans, specifications and colors for the Robertson house, and that since it was one of the homes which was automatically pre-approved, pursuant to Article II, section 2.6, the Robertsons did not need to come before the architectural committee for their approval.
These assertions by the Robertsons and ICI, buttressed by letters in the record, create material questions of fact which need to be resolved below. For example, what is the proper interpretation by the parties in fact and in deed, of the word “construction” used in Article II, section 2.6? Was the exemption applied to other owners and builders who merely used ICI plans? Had other variances been granted in that manner by ICI? There is also an inference from the facts in this case that Countryside originally thought the exemption applied to the Robertsons’ house. Covenants restricting the use of land should be construed against those claiming the right to enforce the restrictions. Young v. Tortoise Island Homeowner’s Association, Inc., 511 So.2d 381 (Fla. 5th DCA 1987). See also Moore v. Stevens, 90 Fla. 879, 106 So. 901 (1925); Lathan v. Hanover Woods Homeowners Association, Inc., 547 So.2d 319 (Fla. 5th DCA 1989); Voight v. Harbour Heights Improvement *677 Association, 218 So.2d 803 (Fla. 4th DCA 1969).
If Countryside believed the exemption did not apply to the Robertson house, did Countryside wait too long to require the Robertsons to get approval from the architectural committee of ICI’s plan and design, at the point when the roof was being constructed? Should not Countryside have demanded approval at the commencement of the construction of the Robert-sons’ house? Has Countryside waived its approval requirement by this conduct?
Further, how reasonable was Countryside’s requirement that all roofs in Steeplechase be the same shade of grey? Were all of the homes in compliance with that color scheme, or were there others exempted by ICI? The record contains no evidence on these points. The enforcement of restrictive covenants cannot be unreasonable or arbitrary. Engvalson v. Webster, 74 So.2d 113 (Fla.1954) (no enforcement if exercised in an unreasonable or arbitrary manner); Coral Gables Investments, Inc., v. The Graham Cos., 528 So.2d 989 (Fla. 3d DCA 1988); Kies v. Hollub, 450 So.2d 251 (Fla. 3d DCA 1984); Flamingo Ranch Estates, Inc. v. Sunshine Ranches Homeowners, Inc., 303 So.2d 665 (Fla. 4th DCA 1974); Voight.
REVERSED and REMANDED.
PETERSON and GRIFFIN, JJ„ concur.

. Holl v. Talcott, 191 So.2d 40 (Fla.1966) (genuine issue of material fact precludes summary judgment). See also Colton v. Silsbee State Bank, 952 S.W.2d 625 (Tex.App.1997) (genuine issues of fact regarding (l)significance of prior violations, and (2) when one first learns of facts causing one to object).