FERNANDEZ, J.
19650 NE 18th Ave., LLC., et al. (“19650”) appeal the trial court’s entry of partial final summary judgment in which the trial court concluded that 19650 has no residential developmental rights to 104 acres of property because the deed of sale did not specify the number of units it could build on the property conveyed to it. We reverse because the trial court improperly interpreted a public covenant to identify a remedy that the original parties did not contemplate, a conclusion which is contrary to well-established principles of real property law that favor the free and unrestricted use of real property.
The community known as “Presidential Estates” covers an area of 158 acres in Miami-Dade County. The property at issue consists of 104 acres of the 158-acre subdivision, originally owned and developed by Hasam Realty Corporation. Ha-sam sought to rezone the original acreage to build a residential development and golf course.
In 1986, Hasam first rezoned the parcel and proposed a Declaration of Restrictive Covenant, or the 1986 County Covenant, with Miami-Dade County. The 1986 County Covenant contains, among other things, a Controlled Densities Provision that limits the total number of residential units, requires subsequent deeds that convey any part of the property to reflect the number of residential units allocated to the parcel being conveyed, and requires that the county be notified of the number of units allocated. The covenant provides, in part:
A. Controlled Densities. Notwithstanding the request for the RU-4M zoning classification, the maximum number of residential units on the Property is hereby established at a total of 850. The densities may vary within the Prop *193 erty, but in no event may the total number of residential units exceed the aforementioned 850 dwelling units. In order to assure proportionate spreading of density, the Owner shall specify in any instrument conveying portions of the Property the number of residential dwelling units allocated to the property being conveyed. The number of dwelling units available to the remaining portions of the Property shall be correspondingly reduced. Prior to sale or transfer of any portion of the Property, the Owner will notify in writing the Director of the Dade County Building and Zoning Department of the property to be transferred, specifying the description for land conveyed and the number of units permitted to be constructed pursuant to such conveyance. Upon the sale or transfer of the portion of the Property, the Owner will send to the Director of the Dade County Building and Zoning Department a copy of the deed conveying such property.
(emphasis added). Furthermore, the covenant provides, in part:
T. Compliance with Conditions. In the event payments required hereunder are not made as promised, or improvements agreed to hereunder are not made as promised, then in addition to any other remedies available, the Dade County Building and Zoning Department is hereby authorized to withhold any further permits, and refuse any inspections or grant any approval on any projects within subject property until such time as this declaration is complied with.
(emphasis added).
Hasam thereafter executed a Supplemental Declaration of Restrictive Covenant, or the 1987 County Covenant. The 1987 County Covenant reduced the density limitation from 850 to 800 dwelling units. It also included other setback restrictions but did not contain a Controlled Densities provision. Several conveyances followed Hasam’s rezoning of the 158-acre parcel. Hasam sold the property to Presidential Golf Estates in 1987. Ten years later, Presidential Golf Estates sold the property to Coscan Presidential, Inc., which ultimately developed the property into 173 zero-lot-line homes. Presidential Country Club, Inc., Presidential Golf, L.L.C., and Presidential Club also took title to the property.[1] None of the deeds of sale in this chain of title recited the number of units of density being allocated, nor was the County ever notified of the number of units allocated.
Presidential Club brought a declaratory judgment action against the Association in 2007, seeking a determination of its developmental rights under the County Covenants and the 1997 Declaration.[2] The Association counter-claimed, after which Presidential Club voluntarily dismissed its complaint. The Association then amended its counter-claim and sought a determination that 19650, the holder, did not have the right to develop the property under the Controlled Densities provision of the 1986 Covenant.[3] In its motion for sum *194 mary judgment on count VI, the Association argued that 19650 could not construct any dwelling units because such rights were neither carved out nor described in the deeds conveying portions of the land, nor did the county receive proper notice. Furthermore, there was no future development contemplated or authorized because the recorded deed did not transfer the right to construct any number of units. The trial court entered partial final summary judgment in favor of the Association on the basis that 19650 had forfeited its development rights.
A trial court’s interpretation of a contract is reviewed de novo. See Peach State Roofing, Inc. v. 2224 S. Trail Corp., 3 So.3d 442, 445 (Fla. 2d DCA 2009). The same standard applies to the review of the entry of summary judgment. Id. 19650 argues, and we agree, that the trial court erroneously added a development rights forfeiture penalty to the language of the covenant.
The trial court erroneously construed the 1986 County Covenant to read that the failure to specify the number of units to be allocated in the conveyance mandates the buyer forfeit any future development rights. Restrictive covenants will be enforced provided that they are unambiguous, reasonable, and make the parties’ intent clear. See Moore v. Stevens, 90 Fla. 879, 106 So. 901, 904 (1925); Publix Super Mkts., Inc. v. Wilder Corp., 876 So.2d 652, 653 (Fla. 2d DCA 2004). The parties’ intent is expressed through the clear and unambiguous language of the covenant. See Anthony v. Anthony, 949 So.2d 226, 227 (Fla. 3d DCA 2007). The first two sentences of the Controlled Densities provision establish a limitation on the total number of residential units. The third sentence requires the owner, upon the sale of any portion of the original 158-acre property, to specify in the deed of sale the number of units the buyer could build on the parcel. The remaining three sentences address the requirement of reduction in the number of dwelling units available to the remaining portions of the property and the requirement of notification to the county. These sentences, standing alone, are neither ambiguous nor contradictory, and their ordinary meaning is commonly understood. See Moore v. Stevens, 90 Fla. 879, 106 So. 901, 903 (1925) (“Due regard must be had for the purpose contemplated by the parties to the covenant, and words used must be given their ordinary, obvious meaning as commonly understood at the time the instrument containing the covenants was executed.”).
The court, however, effectively added a forfeiture provision to confiscate the development rights when the requirements of the covenant were not met. A court may not rewrite a contract to add language the parties did not contemplate at the time of execution. See BMW of N. Am., Inc. v. Krathen, 471 So.2d 585, 587 (Fla. 4th DCA 1985). See also Prestige Valet, Inc. v. Mendel, 14 So.3d 282, 283-84 (Fla. 2d DCA 2009) (reversing and remanding trial court decision because it “essentially rewrote” an agreement). The language of the covenant gives no indication that failure to follow its terms would result in the forfeiture of development rights. Section T specifies the remedies the County could use to enforce it. The parties to the original covenant, Hasam and the County, agreed that in the event an owner violated its provisions, the County could withhold building permits, inspections, or approvals pending correction of the violation. Nothing provided for the *195 forfeiture of the builder’s development rights.
We thus decline to construe the provision to preclude future development altogether simply because a density unit allocation is absent from 19650’s deed of conveyance. “The expressed intent of the parties is the controlling factor.” Moore, 106 So. at 904. The original parties clearly identified the means to remedy a failure to comply with the covenant.
Additionally, the trial court construed the provision against the free and unrestricted use of real property. This is contrary to the general rule of covenant interpretation that requires courts to strictly construe restrictive covenants in favor of the free and unrestricted use of real property. See Esbin v. Erickson, 987 So.2d 198, 201 (Fla. 3d DCA 2008); Lathan v. Hanover Woods Homeowners Ass’n, Inc., 547 So.2d 319, 321 (Fla. 5th DCA 1989). The trial court’s construction of the 1986 County Covenant to require the forfeiture of development rights for non compliance violates this long-standing principle of real property law. We decline to uphold such a conclusion.
Therefore, we conclude that the trial court’s construction of the Controlled Densities provision is unreasonable. The restriction should be enforced based upon its clear and unambiguous terms. Accordingly, we reverse and remand with instruction to enter judgment in favor of 19650.
Reversed and remanded.

. Presidential Club subsequently received county administrative approval for alternate site plans, referred to as Site Plan A, Site Plan B, and Site Plan C. Appellee Presidential Estates Homeowners Association, Inc., which consists of the original homeowners, appealed the approval of Site Plans A, B, and C. The Board of County Commissioners upheld the Association’s administrative appeals and overturned the prior administrative approval.

. The 1997 Declaration is not at issue in this appeal.

. Presidential Club’s lien holder subsequently foreclosed its mortgage on the property. 19650 is the current title holder against *194 whom Presidential Club's lien holder foreclosed.