# Third District Court of Appeal
## State of Florida

Opinion filed May 5, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-358
Lower Tribunal No. 18-15960
_____

## People's Trust Insurance Company,
Appellant,

vs.

## Alejandro Amaro,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Spencer Eig, Judge.

Cole, Scott & Kissane, P.A., and Mark D. Tinker and Mary Lou Cuellar-Stilo (Tampa); and Brett Frankel and Jonathan Sabghir (Deerfield Beach), for appellant.

Legal Armor the People's Law Firm, and Alian Perez; and Alvarez, Feltman, Da Silva & Costa, PL, and Paul B. Feltman, for appellee.

Before EMAS, C.J., and HENDON and MILLER, JJ.

HENDON, J.

People's Trust Insurance Company ("People's Trust") appeals from a final judgment in favor of the homeowner, Alejandro Amaro ("Amaro"), on his single count for breach of contract. We reverse and remand for entry of judgment in favor of People's Trust.

Facts

Amaro entered into a homeowner's insurance contract issued by People's Trust that included a Preferred Contractor Endorsement. The Endorsement provided Amaro with a lower premium and, in exchange, gave People's Trust the right to have its Florida preferred contractor, Rapid Response Team, LLC, repair any covered damage to Amaro's home in lieu of issuing cash payment.

Amaro's property was damaged by Hurricane Irma in September 2017. Amaro timely notified People's Trust of the loss, and People's Trust acknowledged coverage and elected to repair covered windstorm damage under the Preferred Contractor Endorsement, denying coverage for excluded groundwater intrusion to the first floor.[1] It requested Amaro's

---

[1] The "Our Option" provision contained in "SECTION I – CONDITIONS" of the policy lays out the various rights and obligations should People's Trust choose to repair or replace any part of the damaged property, as occurred in this case:

J. Our Option
 At our option:

 . . .

2

submission of a Sworn Proof of Loss to determine if the parties agreed to the scope of loss of the repairs. Although untimely filed, Amaro ultimately submitted a Sworn Proof of Loss on January 23, 2018 in which he claimed loss in the lump-sum amount of $126,072.77. Because Amaro failed to provide any specific supporting documents to identify the scope of his claimed damages or proposed repairs, People's Trust rejected it as noncompliant.[2] People's Trust sent a notice of material breach to Amaro

---

2. For losses covered under Coverage A – Dwelling, insured for Replacement Cost Loss Settlement as outlined in SECTION I – CONDITIONS, Loss Settlement, we may repair the damaged property with material of like kind and quality without deduction for depreciation.

3. We will provide written notice to you no later than thirty (30) days after our inspection of the reported loss.

4. You must comply with the duties described in SECTION I – CONDITIONS, C. 6. and 7.

5. You must provide access to the property and execute any necessary municipal, county or other governmental documentation or permits for repairs to be undertaken.

6. You must execute all work authorizations to allow contractors and related parties entry to the property.

7. You must otherwise cooperate with repairs to the property.

8. You are responsible for payment of the deductible stated in your declaration page.

9. Our right to repair or replace, and or decision to do so, is a material part of this contract and under no circumstances relieves you or us of our mutual duties and obligations under this contract.

(emphasis added).

[2] The policy sets forth the insured's post-loss obligations under SECTION I – CONDITIONS, as follows:

C. Duties After Loss

3

on June 13, 2018, explaining that his continued failure to provide a compliant proof of loss with documentation supporting the repair estimate would constitute a material breach of the policy. Amaro instead filed the

---

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

....

5. Cooperate with us in the investigation of the claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

    a. Show the damaged property;

    b. Provide us with records and documents we request and permit us to make copies; and

    c. Submit to examination under oath, while not in the presence of another "insured" and sign the same.

8. Send to us, within sixty (60) days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

    a. The time and cause of loss;

    b. The interests of all "insureds" and all others in the property involved and all liens on the property;

    c. Other insurance which may cover the loss;

    d. Changes in title or occupancy of the property during the term of the policy;

    e. Specifications of damaged buildings and detailed repair estimates;

    f. The inventory of damaged personal property described in C.6. above;

    g. Receipts for additional living expenses incurred and records that support the fair rental value loss. ...

    (emphasis added).

instant lawsuit alleging a single count for breach of the insurance contract stating that People's Trust failed to: "(i) provide coverage for the entire covered Loss; (ii) acknowledge that payment for the entire Loss would be forthcoming; and/or (iii) make payment of the insurance proceeds for the entire Loss to the Insured."[3]

People's Trust moved to dismiss the claim, to compel its contractual right to an appraisal of the reported loss, and to enforce its right to repair under the terms of the Endorsement.[4] The trial judge abated the case and ordered the parties to appraisal, and reserved ruling on the remainder of the motion. Amaro did not appeal that ruling and instead fully participated in the appraisal process. On July 27, 2019, the appraisal panel found the amount necessary to complete the repairs to be $25,204.70. Once

---

[3] Amaro alleges in his count for breach of contract that People's Trust did not cover the entire claimed loss. The record indicates that People's Trust did not cover the first floor water intrusion damage aspect of Amaro's claim. There is no further explanation for this denial of coverage in the Record on appeal.

[4] The policy provides a procedure for carrying out repairs. In the event of a covered loss: (1) People's Trust will provide written notice that it is exercising its option to repair within 30 days of its inspection of the reported loss, (2) The Insured must provide a Sworn Proof of Loss within 60 days of request, setting forth the claimed scope of repairs; (3) The Insured must submit a fully executed work authorization; (4) The Insured must make payment of the hurricane deductible; (5) The Insured must cooperate with Rapid Response Team's performance of the covered restoration repair; and (6) If the parties disagree as to the scope of repair, the issue will be resolved by appraisal.

appraisal was complete, People's Trust sought to conduct the repairs to Amaro's property.

On September 1, 2019, Amaro, through counsel, advised People's Trust that he had already hired his own contractors, completed the repairs, and sold the house.[5]  He then filed a motion to compel People's Trust to pay the appraisal amount. Amaro argues, incorrectly, that the plain language of the policy dictates that People's Trust is still liable to pay Amaro what it would have paid Rapid Response Team for the repairs. Amaro alleged that as a result of his sale of the property, it would be impossible for People's Trust to invoke its option to repair under the policy's Preferred Contractor Endorsement, and argued that because People's Trust could no longer repair, he was entitled to cash payment in the amount of the appraisal award.

In response, People's Trust filed a motion for summary judgment to void Amaro's coverage because he breached the contract by (1) failing to authorize People's Trust to commence repairs, (2) failing to provide a policy-compliant sworn proof of loss, (3) failing to respect the appraisal

---

[5] Amaro admits in the record that he did not notify People's Trust of the sale of his property before it was able to perform repairs on the property through its preferred contractor, Rapid Response Team.

6

process and (4) filing suit prematurely in violation of the Policy.[6]  People's Trust argued that once it elected to repair pursuant to the language of the Preferred Contractor Endorsement, that election eliminated any obligation to pay cash to the insured in lieu of repair. People's Trust asserted that because the insured completed his own repairs and prevented People's Trust from fulfilling its contractual obligations, there is no other provision within the policy that would entitle the insureds to a monetary payout. Although the parties participated in appraisal, and despite the court's order reserving ruling on People's Trust's election to repair, Amaro circumvented his post-loss obligations and now demands cash in lieu of repairs in contravention of the agreed policy terms.

The trial judge, after hearing arguments from both parties, denied People's Trust's motion for summary judgment, granted Amaro's motion to compel and entered final judgment directing People's Trust to pay Amaro $22,430.93, finding:

> The Complaint filed by the Plaintiff in this case contains a single count for Breach of Contract requesting damages resulting from

---

[6] According to the policy terms, item H. Suit Against Us, provides:
> No action can be brought against us unless there has been compliance with the policy provisions.  . . .  Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured'" has been determined by final judgment or agreement signed by us.

7

the breach. The Appraisal Award affixed the amount of damages as follows: Replacement Cost Value ("RCV") $24,820.68 and Actual Cash Value ("ACV") $22,430.93. These are damages for breach of contract, not an adjustment of the claim under the policy.

People's Trust appeals.

Standard of Review

We review the lower court's interpretation of a contract de novo, and the same standard applies to the review of a summary judgment. Volusia Cnty v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000); 19650 NE 18th Ave. LLC v. Presidential Ests. Homeowners Ass'n, Inc., 103 So. 3d 191, 194 (Fla. 3d DCA 2012) (citation omitted); Fernandez v. Homestar at Miller Cove, Inc., 935 So. 2d 547, 550 (Fla. 3d DCA 2006). In reviewing summary judgment, we consider the record in the light most favorable to the non-moving party. Fresnedo v. Porky's Gym III, Inc., 271 So. 3d 1185, 1186 (Fla. 3d DCA 2019).

Discussion

The record indicates that Amaro timely reported the property damage, and People's Trust timely adjusted the claim, acknowledged coverage and invoked its right to repair. Amaro then submitted a non-compliant sworn proof of loss for the lump-sum amount of $126,072.77, without supporting documentation as required by the contract of insurance.

8

The parties participated in the court-ordered appraisal process which resulted in an appraisal award of $25,204.70 that People's Trust was prepared to honor via their preferred contractor, Rapid Response Team. Amaro did not appeal from the appraisal award and instead, sued People's Trust for breach of contract, hired his own contractor to do the repairs, sold the house, and demanded a cash reimbursement for the amount of the appraisal. Amaro's actions constitute breach of the contract of insurance. Edwards v. State Farm Fla. Ins. Co., 64 So. 3d 730, 732 (Fla. 3d DCA 2011) (holding failure to comply with a condition precedent to payment relieves the insurer of its duty to make payment).

The Preferred Contractor Endorsement modifies certain terms of the homeowner's policy. The relevant term in the Preferred Contractor Endorsement states:

> **SECTION I – CONDITIONS**
> *. . .*
>
> **S. Appraisal,** the following is added to the policy:
>
> Where "we" elect to repair:
>
> 1.    If "you" and "we" fail to agree on the amount of loss, which includes the scope of repairs, either may demand an appraisal as to the amount of loss and the scope of repairs. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, "you" or "we" may request that

the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss and scope of repairs. If the appraisers submit a written report of an agreement to "us", the amount of loss and scope of repairs agreed upon will be the amount of loss and scope of repairs. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss and the scope of repairs. Each party will pay its own appraiser, and bear the other expenses of the appraisal and umpire equally.

2.    The scope of repairs shall establish the work to be performed and completed by Rapid Response Team, LLC™. Such repair is in lieu of issuing any loss payment to "you" that otherwise would be due under the policy. The amount of loss shall establish only the initial amount paid to Rapid Response Team, LLC™ by "us", and any additional amounts required to complete repairs shall be "our" responsibility and will be paid to Rapid Response Team, LLC™ without regard to policy limits or the amount of initial payments.

The pertinent contract language specifies that appraisal is to determine "the amount of loss and scope of repairs," and that the decided "scope of repairs <u>shall establish the work to be performed and completed by Rapid Response Team, LLC</u>." (emphasis added).  It further specifies: "When we have exercised our option to repair 'your' damaged property . . . such repair is <u>in lieu of issuing any loss payment that would otherwise be due under the policy</u>." (emphasis added).  As stated in <u>People's Trust Insurance Co. v. Franco</u>, 305 So. 3d 579, 582 (Fla. 3d DCA 2020),

> The election-to-repair endorsement has been an established option for various Florida residential insurance policy forms for several years. The legal features of the endorsement have

10

been analyzed repeatedly by Florida's appellate courts. The new contract formed between the insurer's preferred and designated contractor under such an endorsement and the insured has been termed a "Drew agreement," a reference to <u>Drew v. Mobile USA Ins. Co.</u>, 920 So. 2d 832 (Fla. 4th DCA 2006).

The trial court failed to recognize that Amaro breached the policy by failing to pay the deductible, filing suit against People's Trust prior to fulfilling his post-loss obligations, and by circumventing the explicit terms of the policy by hiring his own contractor to perform the appraised repairs. <u>See, e.g.</u>, <u>Allstate Floridian Ins. Co. v. Farmer</u>, 104 So. 3d 1242, 1250 (Fla. 3d DCA 2012) (stating Florida courts have consistently interpreted proof of loss obligations coupled with similar no-action clauses to be conditions precedent, i.e., an obligation to be performed before the contract is effective). Courts cannot disregard agreed-upon, contractual provisions between parties. To do so would be to strike the post-loss obligations from the contract "by way of judicial fiat and the bargained-for contractual terms would be rendered surplusage." <u>Shivdasani v. Universal Prop. & Cas. Ins. Co.</u>, 306 So. 3d 1156, 1160 (Fla. 3d DCA 2020) (quoting <u>U.S. Fid. & Guar. Co. v. Romay</u>, 744 So. 2d 467, 471 (Fla. 3d DCA 1999)). The trial court further erred when it re-wrote the terms of the policy to convert an explicit repair policy into a cash value policy. "Florida law provides that insurance contracts are construed in accordance with the plain language of the

policies as bargained for by the parties." City of Fla. City v. Pub. Risk Mgmt. of Fla., 307 So. 3d 135, 138 (Fla. 3d DCA 2020) (quoting Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000); see City of Homestead v. Johnson, 760 So. 2d 80, 84 (Fla. 2000).

The record supports the conclusion that Amaro failed to substantially comply with his contractually mandated post-loss obligations, ultimately rendering impossible People's Trust's performance of its contractual obligation to repair. See Am. Integrity Ins. Co. v. Estrada, 276 So. 3d 905 (Fla. 3d DCA 2019) (certifying conflict with Rodrigo v. State Farm Fla. Ins. Co., 144 So. 3d 690 (Fla. 4th DCA 2014), and Goldman v. State, 660 So. 2d 300 (Fla. 4th DCA 1995)). Finding no genuine issues of material fact, and for the reasons set forth above, we reverse the order on appeal and remand for entry of judgment in favor of People's Trust.

Reversed, and remanded.